Approved: _____
          THANE REHN
          Assistant United States Attorney

Before:   HONORABLE ONA T. WANG
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x
                                  :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA          :
                                  :   Violations of
          - v. -                  :   21 U.S.C.
                                  :   §§ 841(b)(1)(B),
EVELIN BRACY and                  :   841(b)(1)(C),
JORGE RODRIGUEZ LOPEZ,            :   841(h)(1)(A)-(B), 846,
                                  :   and 18 U.S.C. § 1956
          Defendants.             :
                                  :   COUNTY OF OFFENSE:
                                  :   NEW YORK       :
                                  :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   CHRISTOPHER REDDINGTON, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

                         COUNT ONE

   1.   From at least in or about January 2015 up to and including the present, in the Southern District of New York and elsewhere, EVELIN BRACY and JORGE RODRIGUEZ LOPEZ, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

   2.   It was a part and an object of the conspiracy that EVELIN BRACY and JORGE RODRIGUEZ LOPEZ, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).

3.     The controlled substances that EVELIN BRACY and JORGE RODRIGUEZ LOPEZ, the defendants, conspired to distribute and possess with intent to distribute were (1) 40 grams and more of mixtures and substances containing a detectable amount of U-47700, an analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), in violation of 21 U.S.C. § 841(b)(1)(B), and (2) a quantity of mixtures and substances containing a detectable amount of oxycodone and hydrocodone, in violation of 21 U.S.C. § 841(b)(1)(C).

(Title 21, United States Code, Sections 846, 841(b)(1)(B) and 841(b)(1)(C).)

## COUNT TWO

4.     From at least in or about January 2015 up to and including the present, in the Southern District of New York and elsewhere, EVELIN BRACY and JORGE RODRIGUEZ LOPEZ, the defendants, did deliver, distribute, and dispense controlled substances by means of the Internet, and did aid and abet such activity, in such a manner not authorized by Subchapter I of Chapter 13 of Title 21, United States Code.

5.     The controlled substances that were involved in this offense were (1) 40 grams and more of mixtures and substances containing a detectable amount of U-47700, an analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), in violation of 21 U.S.C. § 841(b)(1)(B), and (2) a quantity of mixtures and substances containing a detectable amount of oxycodone and hydrocodone, in violation of 21 U.S.C. § 841(b)(1)(C).

(Title 21, United States Code, Section 841(h)(1)(A)-(B), 841(b)(1)(B) and 841(b)(1)(C).)

## COUNT THREE

6.     From at least in or about January 2015 up to and including the present, EVELIN BRACY and JORGE RODRIGUEZ LOPEZ, the defendants, and others known and unknown, knowingly did combine, conspire, confederate, and agree together and with each other, to violate Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

7.     It was a part and object of the conspiracy that EVELIN BRACY and JORGE RODRIGUEZ LOPEZ, the defendants, and others known and unknown, in an offense involving and affecting

2

interstate and foreign commerce, knowing that the property involved in certain financial transactions, to wit, the depositing of funds into bank accounts and the payment of shipping expenses with those funds from those bank accounts, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of the narcotics trafficking offense described in Count One of this Complaint, with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

8.  It was further a part and object of the conspiracy that EVELIN BRACY and JORGE RODRIGUEZ LOPEZ, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions, to wit, the depositing of funds into bank accounts and withdrawal of cash from those bank accounts, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of the narcotics trafficking offense described in Count One of this Complaint, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

9.  I am a Special Agent with the DEA and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, and my review of documents and other evidence. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3

OVERVIEW

10.     Since at least in or about January 2015, EVELIN BRACY and JORGE RODRIGUEZ LOPEZ, the defendants, conspired with others to distribute controlled substances, including the fentanyl analogue U-47700 and oxycodone, over the Internet and through the mail. The sale of these controlled substances was advertised on various websites purporting to be online pharmacies that enabled customers to purchase various controlled substances without a prescription. When customers placed orders on the websites, the sales of the substances were arranged by email. Members of the conspiracy shipped hundreds of orders of controlled substances around the United States.

11.     In some cases, customers purchased what they believed to be prescription drugs such as alprazolam or oxycodone, but the members of the conspiracy instead shipped pills containing other substances. These substances included U-47700. Based on my discussions with DEA chemists and my review of DEA reports, I understand that U-47700 is an analogue of fentanyl which has no recognized medical uses in the United States and which can often be lethal.

12.     BRACY, RODRIGUEZ LOPEZ, and others facilitated this distribution of controlled substances by filling orders for oxycodone and other controlled substances that were negotiated by email, and mailing those controlled substances throughout the United States, including to the Southern District of New York. BRACY and RODRIGUEZ LOPEZ also received payments for the controlled substances from customers and deposited these payments into multiple bank accounts controlled by BRACY and RODRIGUEZ LOPEZ. BRACY and RODRIGUEZ LOPEZ used those bank accounts to pay for expenses associated with operating the narcotics trafficking conspiracy, such as shipping expenses, and also regularly withdrew large amounts of narcotics proceeds in cash from these bank accounts.

13.     I have reviewed documents obtained from a web hosting service and from the internet pertaining to a website used for selling controlled substances illegally (the "Online Pharmacy Website"). From this review, I learned, among other things, that there are multiple internet domains that all direct to the Online Pharmacy Website, that the Online Pharmacy Website purports to offer prescription medications to customers in the United States, and that the Online Pharmacy Website is hosted in Argentina.

14.     I have spoken with other law enforcement officers who investigated the overdose death of an individual in Boise, Idaho ("Victim-1"). From these conversations, I have learned, among other things, the following:

     a. Victim-1 was found dead in his home on or about March 17, 2017, and tests revealed that his death was caused by elevated levels of multiple prescription opioids as well as fentanyl.

     b. Victim-1's computer contained documents and emails showing that Victim-1 had ordered controlled substances, primarily painkillers such as oxycodone, online multiple times from the Online Pharmacy Website.

     c. Victim-1's bank records and other documents showed that Victim-1 had made multiple wire transfers for a total of approximately $5,475 to a bank account that was in a particular person's name ("Individual-1" and the "Individual-1 Bank Account").

## UNDERCOVER PURCHASES OF CONTROLLED SUBSTANCES

15.     In connection with this investigation, the DEA has conducted a number of purchases and attempted purchases of controlled substances from the Online Pharmacy Website. Based on my review of emails regarding these purchases; my review of bank documents and documents obtained from a particular shipping company (the "Shipping Company"); my participation in visual surveillance; and my communications with other law enforcement agents involved in this investigation, I have learned, among other things, the following:

     a.     Between on or about July 11, 2017, and on or about September 25, 2017, DEA agents conducted a number of undercover purchases of pharmaceuticals from the Online Pharmacy Website. For at least four of these purchases, DEA agents received shipments of pills via the Shipping Company. Three of these purchases tested positive for oxycodone, and one tested positive for alprazolam. All of the shipments were sent using a particular Shipping Company account. I have reviewed records obtained from the Shipping Company and have identified that these shipments were made using pre-printed labels purchased with funds from the Individual-1 Bank Account.

     b.     I have reviewed bank records for the Individual-1 Bank Account and have determined that there is an address in New

Brunswick, New Jersey, associated with the account ("Address-1"). Based on law enforcement surveillance conducted by myself and others, I have learned that from at least November 2017 through January 2018, a person who appears to me to be EVELIN BRACY, the defendant, on the basis of comparisons of this person with known photographs of BRACY, was repeatedly seen at Address-1, at all times of day and exhibiting activity that indicated BRACY was residing at Address-1.

   c. I have also reviewed records obtained from a storage facility (the "Storage Facility"), and have learned that the Individual-1 Bank Account was used to pay for a storage unit at the Storage Facility in the name of EVELIN BRACY from at least January 2017 through at least January 2018.

   d. Between on or about November 29, 2017, and on or about December 12, 2017, an undercover DEA agent ("UC-1") conducted an email negotiation with the user of an email address that was connected to the Online Pharmacy Website (the "Seller"). UC-1 and the Seller agreed that UC-1 would purchase 30 oxycontin tablets for $395.00. UC-1 provided an address in Manhattan, New York, to receive the shipment of pills. UC-1 then offered to pay for the drugs with a money order, and asked the Seller who he should make the money order out to. The Seller instructed UC-1 to make the money order out to "Evelin Bracy," which UC-1 did. I have reviewed bank records showing that this money order was deposited on December 19, 2017 into a bank account owned by BRACY ("Bracy Account-1"). I have also reviewed surveillance images showing the deposit of the money order, and it appears to me that the person who deposited this money order was BRACY.

   e. On December 14, 2017, UC-1 received a Shipping Company shipment containing 30 red pills at the Manhattan Address that UC-1 had provided to the Seller. The sender address was marked "Evelin Bracy," and it listed Address-1 as the return address. The pills subsequently tested positive for alprazolam.

   f. Between on or about May 9, 2018, and on or about May 15, 2018, an undercover DEA agent ("UC-2") conducted an email negotiation with the user of an email address that was connected to the Online Pharmacy Website (the "2018 Seller"). UC-2 and the Seller agreed that UC-2 would purchase 55 hydrocodone tablets for $730.00. The 2018 Seller instructed UC-2 to purchase a money order payable to Individual-1, and send the money order to "Jorge Rodriguez" at an address in New Brunswick, New Jersey. I have reviewed bank records showing that this money order was

6

deposited on May 17, 2018, into the Individual-1 Bank Account. I have also reviewed surveillance images showing the person who deposited of the money order, and it appears to me, on the basis of comparisons of this person with known photographs of JORGE RODRIGUEZ LOPEZ, the defendant, that RODRIGUEZ LOPEZ deposited the money order.

        g.    On May 17, 2018, UC-2 received a Shipping Company shipment containing 55 white pills. The pills subsequently tested positive for hydrocodone.

## SEIZURE OF U-47700

    16.    I have spoken with other law enforcement agents involved in the investigation, and have reviewed reports prepared by these law enforcement agents, and have learned, among other things, the following:

        a.    On or about June 12, 2018, a law enforcement agent intercepted a package addressed to "Jorge Rodriguez" at Address-2, and obtained a search warrant for the package.

        b.    In the package, law enforcement agents found three plastic prescription tablets containing a total of approximately 205 pills with a total weight of approximately 41 grams. A representative sample of the pills subsequently tested positive for U-47700.

## MONEY LAUNDERING ACTIVITIES

    17.    I have reviewed bank records for the Individual-1 Bank Account, including surveillance footage, and have learned, among other things, the following:

        a.    Between January 2015 and March 2018, there were approximately $159,000 in credits to the account and approximately $159,000 in debits from the account.

        b.    The credits to the account were primarily in the form of wire transfers and online banking transfers, typically of several hundred dollars at a time. Based on my training, experience, and participation in this investigation, I believe that these represent payments by customers for shipments of controlled substances. For instance, there were a number of wire transfers from Victim-1, totaling $5,475. *See supra* ¶ 12(c).

            c.    The debits from the account included a large number of cash withdrawals, typically in amounts ranging between $500 and $1,500. The cash withdrawals primarily took place in and around New Brunswick, New Jersey. There were multiple instances where multiple cash withdrawals were made from the account on the same day or within a few days of each other. For instance, on December 1 and 2, 2017, there were four separate ATM cash withdrawals of $700.00 each. Based on my training and experience, this pattern of cash withdrawals is consistent with the use of a bank account to receive proceeds of criminal activity and to regularly withdraw the proceeds in cash without accumulating a significant balance in the account, as a method of concealing the source of the criminal proceeds.

            d.    The Individual-1 Bank Account was also used to make a large number of smaller payments to the Shipping Company, which the narcotics trafficking conspiracy uses to make shipments of controlled substances. *See supra* ¶ 13(a), (d), and (f).

            e.    The Individual-1 Bank Account was used to make regular payments for the storage facility in the name of EVELIN BRACY, the defendant. *See supra* ¶ 13(b).

            f.    Surveillance video shows that a person who appears to be JORGE RODRIGUEZ LOPEZ, the defendant, has made multiple deposits and withdrawals from the Individual-1 Bank Account, including the deposit of the money order sent by UC-2. *See supra* ¶ 13(e).

            g.    On or about April 16, 2018, I conducted visual surveillance of BRACY entering a retail location in North Brunswick, New Jersey, and leaving that location carrying bags of merchandise. Account records for the Individual-1 Bank Account indicate that the debit card for the account was utilized at that location on that date.

    18.    I have reviewed a number of public records databases to attempt to find Individual-1, the person whose name, address, and other personal information is listed as the owner of the Individual-1 Bank Account, and it appears to me that this person does not exist.

    19.    I have reviewed bank records for three accounts owned by EVELIN BRACY, the defendant, including Bracy Account-1, another account in the name of BRACY ("Bracy Account-2"), and an account in the name of a company called "P&J Clothing," for

8

which BRACY is the sole signatory on the account (the "P&J Account" and, together with Bracy Account-1 and Bracy Account-2, the "Bracy Accounts"). From these records, I have learned, among other things, the following:

      a.    Between December 2016 and April 2018, there were a total of at least approximately $627,931.73 in credits to the Bracy Accounts and at least approximately $511,084.83 in debits from the Bracy Accounts.

      b.    The credits to the Bracy Accounts included a large number of cash and check deposits, typically of several hundred dollars at a time. Based on my training, experience, and participation in this investigation, I believe that these are consistent with payments by customers for shipments of controlled substances, such as the $395.00 money order sent by UC-1 that BRACY deposited in Bracy Account-1 on December 19, 2017. See supra ¶ 13(c).

      c.    The debits from the account included a large number of cash withdrawals, typically in amounts ranging between $300 and $4,000. The cash withdrawals primarily took place in and around New Brunswick, New Jersey, and North Brunswick, New Jersey. Based on my training and experience, this pattern of cash withdrawals is consistent with the use of a bank account to receive proceeds of criminal activity and regularly withdraw the proceeds in cash without accumulating a significant balance in the account, as a method of concealing the source of the criminal proceeds.

      d.    Bracy Account-2 was also used to make a large number of smaller payments to the Shipping Company, which the narcotics trafficking conspiracy uses to make shipments of controlled substances. See supra ¶ 13(a), (d), and (f).

20.    I have reviewed New Jersey corporate records, tax records, and information obtained from various databases available to law enforcement, including publicly available information on the Internet, regarding P&J Clothing. Based on this review, it appears to me that this company does not conduct any legitimate business.

21.    I have reviewed New Jersey State tax records and other information in databases available to law enforcement regarding EVELIN BRACY, the defendant, and it appears to me that BRACY earned a total of $7,420.46 in income reported to state tax authorities between January 2015 and March 2018. Based on my

training and experience, I believe that this indicates that the large volume of funds passing through the Bracy Bank Accounts is not connected to any lawful employment of BRACY, and that BRACY has not reported the proceeds of her participation in narcotics trafficking to tax authorities.

## SURVEILLANCE OF THE DEFENDANTS

22.   I and other law enforcement agents have conducted covert visual surveillance of EVELIN BRACY and JORGE RODRIGUEZ LOPEZ, the defendants, on multiple occasions beginning in at least November 2017 and continuing through at least June 2018. Among other things, I and other law enforcement agents have observed the following:

   a.   From at least November 2017 through January 2018, it appeared that BRACY was living at Address-1. Since that time, from at least May 2017 through at least June 2018, based on surveillance of BRACY conducted on multiple occasions, it appears that BRACY resides at another address in New Brunswick, New Jersey ("Address-3").

   b.   On or about May 17, 2018, law enforcement agents conducted visual surveillance of Address-2, where UC-2 had sent the money order to pay for the shipment of hydrocodone. The agents observed a FedEx package arrive that was addressed to "Jorge Rodriguez," which was left at the door of the residence. The agents then observed RODRIGUEZ LOPEZ take possession of the package and bring it into the residence. Agents then observed RODRIGUEZ LOPEZ drive to BRACY's residence at Address-3, where he was observed entering and exiting the residence carrying tools while BRACY was observed allowing him to enter and exit the residence.

   c.   Law enforcement agents have identified a particular building in East Brunswick, New Jersey, that appears to be used by BRACY in furtherance of narcotics trafficking activities. This building is a retail location, but there are a number of indicators that it is not being used for legitimate business. The front door does not appear to be used, and there are only entries from the back door. In addition, the windows are all covered with shades, and there are security cameras trained on the front and back doors. BRACY has traveled to this location on multiple occasions, typically bringing weighted bags to the location and staying there for several hours, and then leaving also carrying weighted bags. For instance, on May 23, 2018, law enforcement agents observed BRACY drive to this building and

enter it through the back door carrying three weighted bags. On another occasion, law enforcement agents observed BRACY entering the building with a role of what appeared to be paper used to print labels for the Shipping Company.

WHEREFORE, deponent respectfully requests that warrants be issued for the arrest of EVELIN BRACY and JORGE RODRIGUEZ LOPEZ, the defendants, and that they be imprisoned or bailed, as the case may be.

_____
CHRISTOPHER REDDINGTON
Special Agent
Drug Enforcement Administration

Sworn to before me this
2d 3d day of July, 2018

_____
HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK